UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JASON DUBY,

         Plaintiff,

v.

SHIRLEY MAY'S PLACE, LLC and
DENISE A. WALSH,

         Defendants.
_____/

Case No. 16-11443

Paul D. Borman
United States District Judge

Elizabeth A. Stafford
United States Magistrate Judge

# OPINION AND ORDER AFFIRMING THE MAGISTRATE JUDGE'S SEPTEMBER 8, 2017 ORDER AND OVERRULING PLAINTIFF'S OBJECTIONS

In this action, Plaintiff Jason Duby sues his mother, Denise Walsh, and her now-defunct business, Shirley May's Place, LLC, alleging violations of the Fair Labor Standards Act, 29 U.S.C. § 206 ("**FLSA**") and Michigan's Workforce Opportunity Wage Act, Mich. Comp. Laws § 408.414 ("**Wage Act**").

The day before his June 20, 2017 deposition, Plaintiff filed a Motion for Protective Order in which he argued that many of the discovery requests that had been propagated by Defendants sought irrelevant information, and were therefore intended solely as a means of harassment or embarrassment. (ECF No. 35.) At the deposition the next day, Plaintiff's counsel refused to allow her client to answer any question pertaining to any of the topics identified in the Motion for Protective Order.

Defendants then filed a Motion to Compel (ECF No. 46), seeking an order requiring Plaintiff to respond to the discovery requests he had challenged in his motion, requesting that the court compel another deposition during which Plaintiff would be required to answer the questions he had been instructed not to answer, and seeking an award of costs and attorney's fees incurred in preparing the Motion to Compel.

On September 8, 2017, Magistrate Judge Elizabeth A. Stafford issued an Order (ECF No. 55) denying Plaintiff's Motion for Protective Order, and granting in part and denying in part Defendants' Motion to Compel. Specifically, the Magistrate Judge ordered Plaintiff to supplement his discovery responses to answer the requests he had refused to answer (subject to a few limitations), ordered Plaintiff to appear for a continued deposition, and imposed monetary sanctions on Plaintiff's counsel for her conduct at the June 20, 2017 deposition.

Now before the Court are Plaintiff's objections to the Magistrate Judge's Order. Finding no merit in them, the Court will overrule the objections and affirm the September 8, 2017 Order of the Magistrate Judge.

### I.     LEGAL STANDARDS

28 U.S.C. § 636(b)(1)(A) and Federal Rule of Civil Procedure 72(a) both provide that a district judge must modify or set aside any portion of a magistrate judge's non-dispositive pretrial order found to be "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). The United States Supreme

Court and the Sixth Circuit Court of Appeals have stated that "a finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948) (explaining the clearly erroneous standard under Federal Rule of Civil Procedure 52(a)); *Hagaman v. Comm'r of Internal Revenue*, 958 F.2d 684, 690 (6th Cir. 1992) (quoting *U.S. Gypsum Co.*); *see also United States v. Mandycz*, 200 F.R.D. 353, 356 (E.D. Mich. 2001) (explaining the standard under Rule 72(a)).

This standard does not empower a reviewing court to reverse a Magistrate Judge's finding because it would have decided the matter differently. *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 (1985) (interpreting the clearly erroneous standard in Rule 52(a)). The Sixth Circuit has noted that: "[t]he question is not whether the finding is the best or only conclusion that can be drawn from the evidence, or whether it is the one which the reviewing court would draw. Rather, the test is whether there is evidence in the record to support the lower court's finding, and whether its construction of that evidence is a reasonable one." *Heights Cmty. Cong. v. Hilltop Realty, Inc.*, 774 F.2d 135, 140 (6th Cir. 1985).

"The 'clearly erroneous' standard applies only to the magistrate judge's factual findings; his legal conclusions are reviewed under the plenary 'contrary to law' standard. . . . Therefore, [the reviewing court] must exercise independent

3

judgment with respect to the magistrate judge's conclusions of law." *Haworth, Inc. v. Herman Miller, Inc.*, 162 F.R.D. 289, 291 (W.D. Mich. 1995) (citing *Gandee v. Glaser*, 785 F. Supp. 684, 686 (S.D. Ohio 1992)). "'An order is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure.'" *Mattox v. Edelman*, No. 12-13762, 2014 WL 4829583, at *2 (E.D. Mich. Sept. 29, 2014) (quoting *Ford Motor Co. v. United States,* No. 08–12960, 2009 WL 2922875, at *1 (E.D. Mich. Sept. 9, 2009)).

## II. DISCUSSION

Plaintiff makes three objections to the Magistrate Judge's order. Two concern specific discovery requests that the Magistrate Judge ordered Plaintiff to answer, and one concerns the Magistrate Judge's imposition of monetary sanctions against Plaintiff's counsel. The Court will address each objection in turn.

### A. Discovery of Plaintiff's financial information

In the September 8, 2017 Order, the Magistrate Judge ordered Plaintiff to "list each and every bank and credit account in his name or accessed by him, and produce a complete copy of records showing deposits to or payments from such accounts, from October 2013 to March 2016, when his employment at the Shirley May's Place ended." (ECF No. 55 at 8-9, Pg ID 3158-59.) Such discovery, the Magistrate Judge held, "is relevant to defenses that [Plaintiff] did not have an employment relationship with defendants that is covered by FLSA or the Wage Act, and that [Defendant]

4

Walsh is entitled to offsets." (*Id.* at 9, Pg ID 3159.)

Plaintiff objects to the Magistrate Judge's determination on several grounds. First, he argues, Defendant Walsh "admitted [in her deposition] that [Plaintiff] was not paid in exchange for his work" (Pl.'s Objs. at 13, Pg ID 3178), thus attenuating any connection between his financial history and the question of an employment relationship in this case. Second, Plaintiff maintains that the discovery cannot be relevant to the issue of Defendant Walsh's entitlement to offsets, since the FLSA does not permit offsets at all. Finally, Plaintiff cites 29 C.F.R. § 1620.32, which imposes record-keeping requirements on employers covered by the FLSA, and argues that the burden is on the employer, not the employee, to maintain records that would tend to prove how much the employee was paid.

These arguments are manifestly without merit. The first argument is also disingenuous, as it is apparent from the transcript of Defendant Walsh's deposition that she did not "admit" that Plaintiff was not paid for his work at the store. In the portion of the deposition quoted by Plaintiff, Defendant Walsh testified that the money she paid to Plaintiff "wasn't for wages" but instead "was for helping" her run the store. (ECF No. 30 Ex. 2, Deposition of Denise Walsh at 96:15-99:16.) Whether any money given to Plaintiff by Defendants amounts to wages under the FLSA is a legal determination that has yet to be made in this case. When Plaintiff characterized Defendant Walsh's deposition in this way for the first time in the briefing submitted

5

to the Magistrate Judge, Defendants described the characterization as "patently false" and based on "cherry-pick[ing] . . . statements in Walsh's deposition," and they were correct. (ECF No. 52 at 7, Pg ID 2683.)

In support of his argument that "offsets" are not permitted under the FLSA, Plaintiff cites only *Martin v. PepsiAmericas, Inc.*, 628 F.3d 738 (5th Cir. 2010), in which the Fifth Circuit reaffirmed its general policy of "look[ing] with disfavor on set-offs unless the money being set-off can be considered wages that the employer pre-paid to the plaintiff-employee." *Id.* at 742. *Martin* is unavailing to Plaintiff. The potential "offsets" in this case are not limited to counterclaims or after-the-fact payments—*Martin* concerned the latter, as the "offset" in question there was a severance package, *see id.* at 740—but also include cash and other items of value received by Plaintiff during the time he alleges he worked for Defendants. Moreover, Plaintiff has cited no case law establishing or even suggesting that the Sixth Circuit has adopted a "bright-line rule" against setoffs like that reaffirmed by the Fifth Circuit in *Martin*. *See id.* at 742. Absent clear governing law to that effect, it would be premature to hold that these discovery requests are irrelevant, given the low threshold for evidentiary relevance at this stage. *See* Fed. R. Evid. 401 (defining evidence as "relevant" if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action").

Finally, although 29 C.F.R. § 1620.32 does impose record-keeping requirements on employers by the FLSA, Plaintiff cites no authority interpreting the regulation as a bar to discovery into a plaintiff's relevant records, nor is this Court aware of any such authority. In addition, 29 C.F.R. § 1620.32 applies to employers and employees subject to the FLSA, and whether the employment relationship alleged here in within the scope of FLSA is an unresolved issue in this case.

The discovery into Plaintiff's financial records ordered by the Magistrate Judge is plainly relevant, at least at this phase of the litigation, and this Court is not persuaded by Plaintiff's insistence that "the breadth of this requirement is stunning." (Pl.'s Objs. at 12, Pg ID 3177.) The breadth of this requirement extends to two and a half years of bank and credit card statements. Plaintiff's first objection is overruled.

**B. Discovery regarding Plaintiff's alleged child support obligations**

The Magistrate Judge ordered Plaintiff to "produce copies of his child support order(s) governing the period from October 2013 to the present" and "documents sufficient to show all of his child support payments from October 2013 to the present," and further ordered Plaintiff to answer Defendants' request that he "[a]dmit that [he] had child support obligations that were unpaid between October, 2013 and March 30, 2016." (ECF No. 55 at 8, Pg ID 3158.)

Defendants had argued that this discovery was relevant to their affirmative defenses, "including that [Plaintiff]'s claims are barred due to unclean hands,

7

consent, acquiescence, his failure to act in good faith, and his own acts, because he chose not to be on payroll at the store so that he could avoid his child support obligations." (ECF No. 46 at 19, Pg ID 1106.) Plaintiff countered, and now argues again as an objection to the Magistrate Judge's ruling, that discovery of his child support obligations has no relevance at all to this case because employees generally cannot waive or contract around the rights guaranteed to them by the FLSA.

This principle has ample support in the governing case law. "As the Sixth Circuit plainly has held, an employer may not abrogate its employee's rights under the FLSA by purporting to obtain the employee's contractual consent to give up those rights." *Gaffers v. Kelly Servs., Inc.*, 203 F. Supp. 3d 829, 841 (E.D. Mich. 2016) (citing *Boaz v. FedEx Customer Info. Servs., Inc.*, 725 F.3d 603, 607 (6th Cir. 2013)); *see also Craig v. Bridges Bros. Trucking LLC*, 823 F.3d 382, 388 (6th Cir. 2016) ("'FLSA rights cannot be abridged by contract or otherwise waived because this would nullify the purposes of the statute and thwart the legislative policies it was designed to effectuate.'") (quoting *Barrentine v. Arkansas–Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981)).

At the same time, though, the law does not so clearly preclude all of Defendants' asserted affirmative defenses as to render evidence regarding Plaintiff's child support obligations wholly irrelevant—at least not with respect to the

8

affirmative defense of unclean hands.[1] This Court finds the Supreme Court's decision in *McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352 (1995), instructive on this point. In *McKennon*, the Supreme Court addressed the question of whether "an employee discharged in violation of the Age Discrimination in Employment Act of 1967 [("**ADEA**")] is barred from all relief when, after her discharge, the employer discovers evidence of wrongdoing that, in any event, would have led to the employee's termination on lawful and legitimate grounds." *Id.* at 354. The Court explained that equitable defenses like the unclean hands doctrine do not completely bar recovery "where Congress authorizes broad equitable relief to serve important national policies" in a given statutory scheme. *Id.* at 360. But the Court went on to qualify this holding as follows:

> That does not mean, however, the employee's own misconduct is irrelevant to all the remedies otherwise available under the statute. The statute controlling this case provides that "the court shall have jurisdiction to grant such legal or equitable relief as may be appropriate to effectuate the purposes of this chapter, including without limitation

---

[1] The defense of unclean hands, also known as "*in pari delicto*," is "an equitable doctrine which says that '[t]hose who seek equity must first do equity,' [and under Michigan law] is 'invoked by the Court in its discretion to protect the integrity of the Court.'" *Westfield Ins. Co. v. Enter. 522, LLC*, 34 F. Supp. 3d 737, 746–47 (E.D. Mich. 2014) (quoting *Lemke v. H & R Block Mortgage Corp.*, No. 11–14979, 2012 WL 715894 (E.D. Mich. March 6, 2012) and *Stachnik v. Winkel*, 394 Mich. 375, 386 (Mich. 1975)). The unclean hands doctrine "is an equitable concept that allows a court to deny injunctive or declaratory relief when the party applying for such relief is guilty of conduct involving fraud, deceit, unconscionability, or bad faith related to the matter at issue to the detriment of the other party." *Sakhawati v. Lynch*, 839 F.3d 476, 478 (6th Cir. 2016) (internal quotation marks and citation omitted).

9

> judgments compelling employment, reinstatement or promotion, or enforcing the liability for [amounts owing to a person as a result of a violation of this chapter]." 29 U.S.C. § 626(b); see also § 216(b). In giving effect to the ADEA, we must recognize the duality between the legitimate interests of the employer and the important claims of the employee who invokes the national employment policy mandated by the Act. The employee's wrongdoing must be taken into account, we conclude, lest the employer's legitimate concerns be ignored. The ADEA . . . is not a general regulation of the workplace but a law which prohibits discrimination. The statute does not constrain employers from exercising significant other prerogatives and discretions in the course of the hiring, promoting, and discharging of their employees. In determining appropriate remedial action, the employee's wrongdoing becomes relevant not to punish the employee, or out of concern for the relative moral worth of the parties, but to take due account of the lawful prerogatives of the employer in the usual course of its business and the corresponding equities that it has arising from the employee's wrongdoing.

*Id.* at 360-61 (internal quotation marks and citations omitted). Ultimately, the Court concluded, the employee's wrongdoing would generally make reinstatement and front pay inappropriate remedies under the ADEA, and could bear on the calculation of back pay damages but would not serve as a total bar to them. *See id.* at 361-63.

The "Penalties" provision of the FLSA contains language substantially similar to the ADEA provision relied upon by the Supreme Court in *McKennon*. It provides that any employer who violates 29 U.S.C. § 215(a)(3), the FLSA's anti-retaliation provision, "shall be liable for such legal or equitable relief as may be appropriate to

10

effectuate the purposes of" that provision.[2] 29 U.S.C. 216(b). (Notably, in the passage from *McKennon* quoted above, the Supreme Court explicitly cited § 216(b) as an analogue to the ADEA provision under discussion. *See McKennon*, 513 U.S. at 361.) Accordingly, in the years since *McKennon* was decided, a number of federal courts have cautiously recognized the possibility of an unclean hands defense to an FLSA action. *See, e.g., Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1308 (11th Cir. 2013) (noting in an FLSA case that "[t]he *in pari delicto* defense may be applied to bar recovery under a federal statute only where (1) the plaintiff bears at least substantially equal responsibility for the violations he seeks to redress, and (2) preclusion of the suit would not substantially interfere with the statute's policy goals," but concluding that the first prong of the standard was not met in the case at bar); *Perrin v. Papa John's Int'l, Inc.*, 114 F. Supp. 3d 707, 725 (E.D. Mo. 2015) (acknowledging "authority for the proposition that at least some courts have found that the affirmative defense of unclean hands may be applicable to FLSA cases in limited circumstances" but stating that "this is the exception rather than the rule"); *Jackson v. Egira, LLC*, No. 14-3114, 2016 WL 1558136, at *3 (D. Md. Apr. 18, 2016) ("For the *in pari delicto* defense to bar recovery under FLSA, the plaintiff [must] bear[ ] at least substantially equal responsibility for the violations he seeks to

---

[2] Plaintiff has expressly asserted a retaliation claim under § 215(a)(3) in this action. (*See* ECF No. 30, Am. Compl. ¶¶ 40-51.)

11

address, and...preclusion of the suit [must] not substantially interfere with the statute's policy goals. The plaintiff must be an active, voluntary participant in the unlawful activity that is the subject of the suit.") (alteration in original) (internal quotation marks and citations omitted); *Lillehagen v. Alorica, Inc.*, No. 13-0092, 2014 WL 6989230, at *30 (C.D. Cal. Dec. 10, 2014) ("The question of whether the unclean hands defense is available in FLSA [actions] in light of the Supreme Court's decision in *McKennon* has not been squarely and fully addressed by any court. . . . Some federal district courts have refused to strike allegations of the affirmative defense of unclean hands in FLSA cases at the pleadings stage, out of an abundance of caution that the unclean hands defense might exist. Others have stricken allegations of the unclean hands defense for insufficient pleading or decided whether evidence was relevant to an unclean hands defense without opining on whether an unclean hands defense actually exists.") (citations omitted) (collecting cases). The Sixth Circuit has not weighed in, and the only district court within the Sixth Circuit to have discussed the issue at all did so only indirectly and without expressly deciding whether the unclean hands defense exists in FLSA actions. *See Bennett v. Highland Graphics, Inc.*, No. 14-02408, 2017 WL 4512470, at *7 (M.D. Tenn. Oct. 10, 2017) (denying defendants' post-trial motion for judgment as a matter of law, which had been partly based on the court's prior refusal to instruct the jury on an unclean hands defense, because the defendants had not timely raised the defense,

12

and because the trial evidence would not have supported it in any event).

Each of the decisions cited in the paragraph above was made in the context of a dispositive motion. Here, the Court's only task is to determine whether Defendants should be barred from discovering information concerning Plaintiff's child support obligations because they have no evidentiary relevance as a matter of law. Given this early procedural posture, the Court need not decide the legal question of whether the unclean hands defense (or any other affirmative defense asserted by Defendants) is available in an FLSA action. In view of the unsettled nature of this question, and absent any contrary precedent, this Court finds that the low threshold for relevance is met in this instance, and thus will not set aside the Magistrate Judge's order that Plaintiff comply with discovery requests regarding his child support obligations.

### C. Monetary sanctions against Plaintiff's counsel

In the final section of the September 8, 2017 Order, the Magistrate Judge imposed sanctions on Plaintiff's counsel, requiring her to reimburse Defendants for "half of the reasonable expenses incurred from filing the motion to compel [(ECF No. 46)], and all of the reasonable expenses incurred due to [Plaintiff's] continued deposition." (ECF No. 55 at 3, Pg ID 3153.)

The Magistrate Judge imposed these sanctions based on Plaintiff's counsel's actions at the June 20, 2017 deposition of Plaintiff: after having filed the Motion for Protective Order one day before the deposition, Plaintiff's counsel repeatedly

instructed her client not to answer deposition questions that she deemed irrelevant (and had argued were irrelevant in the Motion for Protective Order). (*See* ECF No. 55 at 10-12, Pg ID 3160-62 (citing ECF No. 50, Defs.' Mot. Compel Ex. 5, Deposition of Jason Duby at Pg ID 2417-20, 2428, 2460-64, 2510-11).) This conduct, the Magistrate Judge found, violated Federal Rule of Civil Procedure 30(c)(2), which provides that an attorney may instruct a deponent not to answer questions "only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion [to terminate or limit a deposition] under Rule 30(d)(3)." The Magistrate Judge then cited Federal Rule of Civil Procedure 1, which provides that attorneys should employ the Rules "to secure the just, speedy, and inexpensive determination of every action and proceeding," and concluded that Plaintiff's counsel "fell short of her responsibility under Rule 1 by unreasonably objecting to discovery requests, and by frequently interrupting defense counsel's questioning of Duby and instructing him to not answer even mundane and noninvasive questions." (ECF No. 55 at 12, Pg ID 3162.) In awarding costs, the Magistrate Judge relied upon Federal Rule of Civil Procedure 37(a)(5)(c), which provides that where a motion to compel disclosure or discovery is granted in part and denied in part, the court may "apportion the reasonable expenses for the motion." Plaintiff objects in several regards.

    First, Plaintiff argues that the Magistrate Judge erred in failing to make

14

findings as to whether Plaintiff's objections to Defendants' discovery requests were "substantially justified." A separate provision of Rule 37 requires that if a motion to compel is granted, the court must require the party whose conduct necessitated the motion to pay the reasonable costs of the motion unless that conduct was "substantially justified." Fed. R. Civ. P. 37(a)(5)(A)(ii). Plaintiff acknowledges that this applies to motions to compel that were granted in full, which was not the case here, but argues that if the Rules require a court to address whether a party's conduct was substantially justified in the case of motions that are fully granted, it makes little sense in the context of a motion that was only granted in part to employ a laxer reasonableness standard. To do so, Plaintiff argues, "would contravene the text of the federal rules and that would allow sanctions for even the most routine discovery disputes, discouraging parties from seeking judicial protection from oppressive discovery." (Pl.'s Objs. at 19, Pg ID 3184.) The argument is frivolous. What Plaintiff characterizes as "contraven[ing] the text of the federal rules" was in fact *full compliance* with the text of the federal rules on the Magistrate Judge's part. Rule 37(a)(5)(C) plainly provides that where a motion to compel is granted in part and denied in part, the court "may . . . apportion the reasonable expenses for the motion." That is exactly what the Magistrate Judge did in this case.

Second, Plaintiff argues that Plaintiff's counsel's conduct at the June 20, 2017 deposition was permissible under Federal Rule of Civil Procedure 30(d)(3), which

provides that "[a]t any time during a deposition, the deponent or a party may move to terminate or limit it on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party." Fed. R. Civ. P. 30(d)(3)(A). As far as the Court can measure, the argument seems to be that for Plaintiff's counsel to make such a motion would have been justified, but was actually needless because she had already filed the Motion for Protective Order the day before, and so Plaintiff's counsel acted within the dictates of the Rules by doing what she did.

This argument is devoid of merit. Rule 30(d)(3) allows a deponent or a party to move to limit or terminate a deposition based on the way that the deposition is being conducted. The presentation of a Rule 30(d)(3) motion is one of three (and only three) specified grounds for instructing a deponent not to answer a question; the other two are "when [it is] necessary to preserve a privilege" and "to enforce a limitation ordered by the court." Fed. R. Civ. P. 30(c)(2). Plaintiff's counsel's decision to instruct her client not to answer various lines of questioning could only be justified under the Rules for one of these three reasons, and Rule 30 is clear that a "person may instruct a deponent not to answer *only when*" one of these three circumstances presents itself. Fed. R. Civ. P. 30(c)(2) (emphasis added). Even if Plaintiff's counsel would have been justified in moving to limit or terminate the deposition under Rule 30(d)(3)—and there is little to no indication that she would

16

have been—the fact remains that she did not. Since Plaintiff's counsel did not instruct her client not to respond on the basis of privilege or to enforce a court-ordered limitation, none of the three grounds set forth in Rule 30(c)(2) for instructing a deponent not to answer questions were present in these circumstances.

All in all, Plaintiff advances an interpretation of Rules 30 and 37 that would allow an attorney to move for a protective order immediately before a scheduled deposition, and then rely on that pending motion to unilaterally cut off opposing counsel's ability to question the deponent on all topics that the attorney wishes to exclude from the deposition's scope. This Court is not aware of any authority interpreting Rules 30 and 37 to justify litigation tactics like this. Plaintiff's counsel's actions were sanctionable, and this Court sees no legal or factual error in the Magistrate Judge's imposition of costs.

### III. CONCLUSION

For the reasons stated above, the Court hereby OVERRULES Plaintiff's objections (ECF No. 57) and AFFIRMS the September 8, 2017 Order of the Magistrate Judge (ECF No. 55).

On November 3, 2017, Defendants filed with this Court a Bill of Costs pursuant to the Magistrate Judge's September 8, 2017 Order. (ECF No. 59, Bill of Costs.) Plaintiff's counsel is hereby ORDERED to reimburse Defendants for the amount specified in the Bill of Costs, representing half of the reasonable expenses

incurred from the filing of the motion to compel and all of the reasonable expenses incurred due to Plaintiff's continued deposition, within **fourteen (14) days** of the date of this Opinion and Order.

IT IS SO ORDERED.

s/Paul D. Borman
Paul D. Borman
United States District Judge

Dated: November 3, 2017

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on November 3, 2017.

s/D. Tofil
Deborah Tofil, Case Manager